IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KATHY JO VAN HOOSEAR,<br><br>Plaintiff,<br><br>vs.<br><br>DR. KILOLO KIJAKAZI,<br><br>Defendant. | **8:22CV150**<br><br>**ORDER** |

The court received the attached document from Kathy Jo Van Hoosear in the above-referenced matter. The court is liberally construing the pro se brief as a combined motion and brief requesting reversal of the SS decision denying benefits. However, the brief mailed to the court is not signed. Accordingly,

IT IS ORDERED:

1) Plaintiff shall send a signed version of her motion/brief to the court within 15 days of the date of this order. The failure to do so may result in dismissal of her case.

2) The Clerk shall mail a copy of this order to Plaintiff at her address of record.

Dated this 17th day of October, 2022.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge

1

IN THE UNITED STATES DISTRICT COURT
FOR THE STATE OF NEBRASKA

| KATHY JO VAN HOOSEAR<br><br>Plaintiff.<br><br>vs.<br><br>KILOLO KIJAKAZI<br>ACTING COMMISSIONER OF<br>SOCIAL SECURITY<br><br>Defendant | CIVIL ACTION NO. 8:22-CV-00150<br><br>BRIEF IN SUPPORT OF<br>MOTION TO REVERSE THE<br>COMMISSIONERS DECISION |
|---|---|

COMES NOW, Plaintiff, Kathy Jo Van Hoosear, with the Motion requesting the Court reverse the Commissioner's decision denying disability benefits and remand her claim for the reasons included in the Plaintiff's brief states as follows:

## STATEMENT OF ISSUE

*The Judge stated that I can do past relevant work as I have only limited physical limitations and moderate mental limitations. For the reasons I will state below, I feel the judge should have continued on to the 5th step in the disability determination process.*

## STATEMENT OF CASE

*Every day is a challenge for me. Pain limits my ability to do any type of manual work. Standing for very long is painful and sitting is even worse. Since 2009, I have been terminated from four different types of office jobs due to my lack of focus, concentration and the fact that I tend to lash out at others when I do not agree.*

## STATEMENT OF FACTS
For the reader
The following is information from Notice of Decision-Unfavorable
By Administrative Law Judge Chris Yokus
Pages 15 through 36 of records collected for my case.
Statements from Judge Yokus are in normal font, my response is bold font.

RECEIVED
OCT 1 4 2022
CLERK
U.S. DISTRICT COURT

## MEDICAL

Page 21-Paragraph 3 States there is evidence in the medical record of impairments are non-severe, in that such impairments establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on my ability to meet the basic demands of work activity (20 CFR404.1521, 416.921). Specifically mentioned is that I have been treated for osteoarthritis in my hands, osteoporosis, hyperthyroidism and diabetes (Ex.1F; 2F; 3F; 6F; 7F).

Page 21-Paragraph 6 states that I have been diagnosed with osteoporosis, but that the record does not indicate any more recent fractures of other complications from this impairment during this period. It states that I have been diagnosed with hypothyroidism and diabetes, but without noted complications from these impairments in my treatment record (Ex. 3F; 6F; 11f).

**Page 615 (labeled Ex. 7F, p.33) Date of exam August 6, 2020. Findings show mild degenerative changes in the IP joints of the fingers and thumb as well as chronic mild degenerative osteoarthritis of both the left and right hand. It states multiple plate and screw fixation hardware is present at the third metacarpal bone of left hand and healed old**
**fractures of the right distal radius.**

**The thyroid disorder I have been diagnosed with is called Hashimoto's disease which is an autoimmune disorder affecting the thyroid gland. Due to this disease, I suffer from a number of the symptoms such as muscle aches, and joint pain and stiffness. Some of the other symptoms are depression and problems with memory and concentration. Pages 444 (Ex.2F. p. 58) 695 (Ex. 7F, p.113) note complaints of joint pain and body aches. In late 2021 or early 2022 I had surgery to release a trigger finger. At the time, the surgeon told me this is another common thing for people with Hashimoto's.**

Page 21-Number 4-Paragraph 8 states that in the brief submitted by my representative prior to the hearing, argued that my back impairment met listing 1.04 and that my mental impairments also met listing 12.04 (EX. 19E) but that the brief provided little support for this argument in terms of citations to the medical evidence of record.

**Page 360 (Ex.18E; p. 1) refers to a letter sent to the judge on March 3, 2021, from my representative asking if my hearing date could be move out 14 days allowing for more time to receive important medical records not yet provided by Regional West Medical Center. With this information, he may have been able to better provide evidence to support this argument.**
**In his brief he stated that I likely have left L5 nerve root impingement, as documented in MRI's dated 09/04/19 and 08/14/20 (Page 364 EX.19E; p.1).**
**Page 365 (Ex.19E; p. 2) his brief refers to a document completed by John Carrington, PA-C on 11/11/20 (Page 713 Ex. 7F; p. 1, 2, 3). In the document, John Carrington, PA-C provided his opinion regarding my ability to stay on task during an 8 hour workday, my ability to sit, stand or walk for long periods of time. He advised I can never stoop, kneel, crouch or crawl.**

Page 22-Paragraph 3 States there is no evidence of compromise of a nerve root, spinal arachnoiditis or pseudo claudication (Ex. 6F, p.9). Only mild lower degenerative change without

acute abnormality. No motor loss, no sensory or reflex loss (Ex. 2F, p.8; 3F, pp14, 22; 14F, p.16).

**Page 539 (Ex. 6F, p. 6) MRI of the lumbar spine dated 08/14/20 shows a slight disc bulge L1-2, L2-3, L3-4 and L4-5. At level L5-S1 shows a mild disc bulge/osteophyte ridge is most pronounced laterally to the left. There is a posterior fissure. Also states there is probable impingement on the left L-5 nerve root. This possible left L-5 nerve root impingement was also noted on page 381 (Ex. 1F, p. 7) MRI dated 09/14/19. This report also shows small concentric disc bulging at L5-S1, L4-5, L2-3, and L1-2. And small concentric disc bulging at L3-4 with superimposed left paracentral disc protrusion.**

**In regards to exhibit numbers provided by the judge in his above statement:**

**Page 542 (Ex. 6F, p.9) provided above is a report of a bone density test done on 07/07/20 that states the 10-year fracture risk estimate is elevated.**

**Page 394 (Ex. 2F, p.8) show reference to the menstrual history portion of an office visit at CAPWN with John Carrington PA-C on 12/12/19 and has no mention of having or not having motor loss, sensory or reflex loss.**
**Page 482 (Ex. 3F, pp14) refers to a reproductive health visit at CAPWN on 01/29/20 and has no mention of having or not having motor loss, sensory or reflex loss.**
**Page 490 (Ex. 3F, p. 22) show reference to the menstrual history portion of an office visit at CAPWN with John Carrington PA-C on 01/16/20 and has no mention of having or not having motor loss, sensory or reflex loss.**
**Page 846 (Ex. 14F, p. 16) ) show reference to the menstrual history portion of an office visit at CAPWN with John Carrington PA-C on 02/11/21 and has no mention of having or not having motor loss, sensory or reflex loss.**

Page 25- Paragraph 2 states that in my testimony I stated I receive special accommodations in performance of my work, including extra breaks but that the medical evidence of record gives little indication as to why I would be prohibited from performing such <u>work full-time.</u>

**Page 714 through 716 (Ex.8F, p.1, 2, 3) is a Medical Source Statement completed by John Carrington PA-C on 11/11/2020. Number 11. He states that I was not <u>currently</u> using an assistive device. Number 16. Asks if he believes my conditions would prevent full-time, competitive and ongoing work. He marked yes. Number 18. He goes on to say how I do strive work and perform my duties despite my pain. Unfortunately, this document did not hold much persuasion with the judge as he stated on Page 27 and 28.**

**Page 419 (Ex. 2F, p. 33). During my visit with John Carrington PA-C on 08/22/19 we did discuss me applying for disability.**

Page 25-Paragraph 4 States that shortly before the alleged onset date, I reported several days of worsening back pain on July 18, 2019 (Ex. 1F, p.2). It states I reported a long history of lower back pain, but the examination primarily noted tenderness without any noted standing or walking difficulties (Ex.1F, pp.5-6).

**Page 376 (Ex. 1F, p.2). This was an emergency room visit on July 18, 2019 where I was having tremendous back pain with muscle spasms. The doctor spent about 5**

minutes with me. He said there was no need for any images as we already know I suffer from degenerative disc disease. He ordered a Percocet for me then discharged me. I am on a pain contract with John Carrington PA-C at CAPWN so Percocet was not what I was asking for. I had gone to the emergency room in hopes of an injection to calm to spasms and pain.

**Page 379 and 380 (Ex.1F, pp.5-6) refers to and MRI done on 10/23/19 due to a liver mass seen on a spine MRI done previously. States nothing regarding this July 18, 2019 visit.**

Page 25-Paragraph 5 makes reference to a follow-up appointment I had on August 22, 2019 with John Carrington PA-C. It states I reported that my back pain was better, and much less painful but with continued leg pain (Ex.2F p.33). The examination noted that I had a slight limp, but otherwise had no other abnormalities (Ex.2F, p. 34). MRI done on September 4, 2019 showed mild multilevel degenerative disc disease, with some possible impingement (Ex. 1F, p7).

**Page 419 and 420 (Ex. 2F p.33, 34). This was a month follow up from the E.R. visit on 07/18/19 for back pain. The visit was with John Carrington PA-C. at CAPWN on 08/22/19. I did advise that my back pain was better and <u>less</u> painful. He did note that my back pain is frequently dependent on my activity level and if I do a lot of physical work it does worsen my back pain. He states that my leg pain is better but still a chronic problem.**

**Page 381 (Ex. 1F, p7). This is a lumbar MRI done on 09/04/19 that does show mild multilevel degenerative lumbar spondylosis, slightly increased with greatest changes at L5-S1. Along with moderate left neural foramen narrowing with abutment and possible impingement of the exiting left L-5 nerve root.**

**Page 538 and 539 (Ex. 6F, p. 5, 6) is another lumbar MRI done on 08/14/20 that states bone marrow signal in notable for degenerative endplate signal change at L3-4 and L5-S1. Probable benign hemangiomas are present in L5-S1 vertebra. L4-5 disc only mildly narrowed. Disc desiccation is present throughout the lumbar spine. And again states there is a probable impingement on the left L-5 nerve root.**

Page 26-Paragraph 1 continued from page 25. States I primarily noted only back pain while lifting but that the record notes few persistent standing and walking difficulties from my symptoms.

**The majority of my visits with John Carrington PA-C in this time frame were mostly for sinus issues and due to an injury to my foot and ankle from a fall where I missed a step going down my stairs. So my standing, sitting, and walking difficulties due to by back and other chronic pain issues were not discussed. Page 393 (Ex. 2F, p.7) Page 505 (Ex. 3F p.37) Page 668 (Ex. 7F, p.86)**

Page 26-Paragraph 4 refers to a Neurosurgery Consultation I attended on June 15, 2020 which states was with Dr. Haque, M.D. regarding my ongoing back pain (Ex. 5F, p.2). Some positive straight leg
raise testing on the left side (Ex. 5F, p.3). States Dr. Haque recommended only continued conservative treatment in the form of physical therapy and medication (Ex. 5F, p.3). Lumbar

spine images noted only continued mild lower lumbar degenerative changes, without acute abnormalities or instability, along with some degenerative anterolisthesis at L-4-L-5(Ex. 6F, p.3).

**Page 521 (Ex. 5F, p.2). This visit was actually not with Dr. Haque. This was a Neurosurgery Consultation I attended on June 15, 2020 with Mary Schweitzer APRN. Dr. Haque signed off as overseeing physician. I did not see Dr. Haque until June of 2021 (after this unfavorable decision). At that time he found a significant herniated disc at L5-S1. This herniated disc was most likely missed as in herniated to the outside of the spine instead of the center. I had my first surgery for this on 07/23/21.**

Page 26-Paragraph 6 refer to chiropractic and physical therapy treatment with little indication that my symptoms had worsened (Ex. 9F; 13F; 15F). Last seen February 11, 2021, with report of sinus infection (Ex.14F, p.15). Examination at the time noted I walked with normal gait and station, and my mood was "cheerful". (Ex. 14F, p.16).

**Page 859 (Ex.15F, p.1). Visit with Kira Bowhay at Bluffs Chiropractic on 02/26/21. Under Subjective: I stated that overall my left and right lumbar as well as left and right sacroiliac felt worse since last visit which was on 02/22/21. Also states cervical, upper thoracic and mid thoracic pain felt worse since last visit which was on 02/22/21. Diagnosis of Segmental and somatic dysfunction of the lumbar, sacral, thoracic and cervical regions.**
**Page 867 (Ex. 15F, p.9). Visit with Mary Beth Wheeler at Bluffs Chiropractice on 02/17/21. Under Subjective: I stated that overall my left and right lumbar as well as left and right sacroiliac felt worse since last visit which was on 02/15/21. Also states cervical, upper thoracic and mid thoracic pain felt worse since last visit which was on 02/15/21**
**Page 820 (Ex.13F, p. 13). Elite Physical Therapy dated 02/15/21. Under assessment: States I did not tolerate exercise well that day. Very sore before coming in and c/o pain throughout entire session. However did not observe restriction in movement while I was distracted during exercise.**

Page 27-Paragraph 2 states the record supports that I can perform light exertional work, with an occasional ability to climb ramps, ladders, and scaffolds and stairs, and to kneel, stoop, crouch, and crawl. Have no concentrated exposure to extreme cold temperatures or vibration. Can understand, follow and complete more than simple, but less than complex instructions and tasks, to prevent exacerbations of my mental symptoms.

**Page 714 through 716 (Ex.8F, p.1, 2, 3) is a Medical Source Statement completed by John Carrington PA-C on 11/11/2020. Number 13 states cannot stoop, kneel, crouch or crawl. However, this document did not hold much persuasion with the judge as he stated on Page 27 and 28.**

Page 27-Paragraph 6 refers to a Medical Source Statement completed by PA-C John Carrington on November 11, 2020 where he had indicated that I could only stand 2 hours per day, could only walk for 1 hour per day and could only sit for 1-to-2 hours a day due to chronic pain (Ex.8F). (Continues as paragraph 1 on page 28) John Carrington also opined that I could never stoop, kneel, crouch, or crawl (Ex. 8f). He noted that I would miss 1-to-2 days per month, would be off-task less than percent of the workday, and would need a 10-to-30 minute unscheduled break (Ex.8F).

It is stated that this opinion is not persuasive, as it greatly overstates the extent of my

limitations. It is further said that of note, this opinion is inconsistent with my current work which requires me to sit, stand, and walk more than indicated by PA-C John Carrington, and presumably requires stooping and other postural tasks that he states she could never do. (hearing testimony?) It continues to say that this opinion is also not supported by examinations during the period in question, which do not indicate any persistent standing and walking difficulties and not only continued conservative treatment of my symptoms (Ex. 1F; 2F; 3F; 7F).

**As stated before, the majority of my visits with John Carrington PA-C in this time frame were mostly for sinus issues and due to an injury to my foot and ankle from a fall where I missed a step going down my stairs. So my standing, sitting, and walking difficulties due to by back and other chronic pain issues were not discussed. Page 393 (Ex. 2F, p.7) Page 505 (Ex. 3F p.37) Page 668 (Ex. 7F, p.86)**
**Page 715 (Ex.8F, p.2). As for as John Carrington PA-C stating that I could only stand 2 hours per day, could only walk for 1 hour per day and could only sit for 1-to-2 hours a day due to chronic pain, looking at the document I do believe this is meant that I can only sit for 1-to-2 hours at a time, stand for 2 hours at a time and walk for 1 hour at a time as marked on question 8. The reason I believe this is what he meant is because question 9 asks if I would require the ability to shift between sitting, standing and walking, his response was "yes".**


PSYCHOLOGICAL


Page 22-Paragraph 5 states only mild mental limitations. On page 23 (paragraph 1 continuing from page 22), it goes on to state that because I have been able to work during the period in question at a job that requires me to interact with customers and co-workers on a regular basis, and I reported that I am able to shop in stores, this supports few limitations in this area.

**Page 729 (Ex.11F, p.3) Visit with Janine Mayo LMHP on 02/04/21. We talked about an incident at work where I lost my temper and frightened a coworker.**
**Page 307 (Ex. 7E, p.4). This is an Adult Function Report filled out by my mother, Barbara Van Hoosear on 12/09/19. Number 18c refers to shopping; where my mother responded that sometimes I will have her drive me and other times she will shop for me.**
**Page 356 (Ex. 15F, p1) is a letter written by mother speaks of my mood swings and how they have cost me some jobs**.

Page 23-Paragraph 2. Examinations consistently note that I have intact attention and concentration, which supports my functioning in this area is not seriously limited, though it is noted that I am anxious at times, which would support some limitations (Ex. 2F, pp.8, 42, 59; 3F, p.37; 4F, p.5; 11F, 99.4, 7, 15, 21, 24). It states I am able to work over 20 hours a week in my part-time job, with no noted deficits, which further supports that I have no more than a moderate limitation in this area, as this activity presumably requires sustaining attention over several hours a day.

**Pages 394 (Ex. 2F, p.8), 428 (Ex. 2F, p.42, 455 (Ex. 2F, p.59), 506 (Ex. 3F, p.38). Are all visits with John Carrington PA-C and on all four visits he notes my memory to be intact for recent and remote events.**

**Pages 730 (Ex. 11F p.4), 733 (Ex. 11F p7). All visits with Janine Mayo LMHP. Neither note memory or concentration.**
    **\* Page 730 (Ex. 11F p.4) notes Motor activity as rocking and fidgety. Speech: pressured and rapid. Mood as anxious, pleasant and hopeful. Sensorium: alert, clear and highly distractible.**
    **\*Page 733 (Ex. 11F p7). Notes Motor activity as rocking and fidgety. Speech: normal for all. Mood as anxious, worried, pleasant and hopeful. Sensorium: alert, attentive and clear.**

**Pages 741(Ex.11F, p.15), 747(Ex.11F, p.21), 750 (Ex.11F, p.24). All refer to the same visit with Nathalie Cushing, LIMHP.**
    **\*Page 741(Ex.11F, p.15). She does note under the Intellectual Functioning: intact memory process. Nothing noted on concentration. Motor Activity: normal gait (however this was video). Speech: normal for all. Mood: anxious, worried, pleasant, hopeful. Thought and Perception: lucid.**
    **\*Page 747(Ex.11F, p.21). Notes Memory impairment: now. It does reflect my telling her that poor concentration is one of my bigger issues, that I had just recently noticed some memory loss as I could not even remember a long time friend's name when I ran into her at wal-mart. It also makes reference to my arrests, my termination from Faneuil and my cutting off my hair in frustration and anger.**
    **\*Looking at page 742 (Ex 11F, p.16) She noted that with the information provided during the required Initial Diagnostic interview, it was her opinion that I met medical necessity for outpatient mental health services and met the DSM 5 diagnostic criteria for Bipolar 1 disorder and other mixed Anxiety Disorder.**
    **\*As far as my ability to work over 20 hours a week in my part-time job, with no noted deficits, I am told almost on a daily basis, sometimes several times a day to stay on task and focus. In fact at one point I received a verbal warning and was advised I was to only follow my specific list of duties per day and not help others, to see if that would help me stay on task. I know this is just my word but I did provide Social Security with the name and number of one of my supervisors.**

### All in reference to Dr. Hutt's Findings

    Page 24- Paragraph 5 states that my medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, my statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with medical evidence and other evidence in record. Refer to Dr. Hutt

    Page 25- Paragraph 3. The judge states the record also notes inaccurate statements to a consultative examiner, which may have been made to exaggerate the extent of my functional limitations. It goes on to say that I reported to Dr. Hutt in March 2020, that I was not currently in the workforce and in fact had performed no work since 2009 having lost employment in the past due to "focus issues and outbursts"(Ex. 4F, p.2)

    Page 26-Paragraph 2. Dr. Matthew Hutt, Ph.D., on March 6, 2020 (Ex. 4F). It again states that I reported I had been unable to work since 2009 because of my mental symptoms. Moreover, without noting any of the work I had done since then and without mentioning the part-time work I was performing at the time (Ex. 4F, p.2). States I reported no mental health treatment at that time though taking Adderall to address ADHD symptoms (Ex. 4F, p.2).

Page 26-Paragraph 3 states Dr. Hutt reports I had no noted attention deficits when completing the examination tasks (Ex. 4F, p.5). Following the examination, Dr. Hutt diagnosed me with mood disorder, with some borderline personality traits, and a history of ADHD (Ex. 4F, p.6)

Page 27-Paragraph 5 states that Dr. Hutt indicated that I would not have difficulty maintaining social functioning, but that I would not be able to sustain concentration or attention needed for task completion, could not understand, remember, or carry out short and simple instructions (Ex. 4F). It goes on to say that this opinion is not persuasive, as it is inconsistent with Dr. Hutt's own examination, which did not indicate any significant attention, memory, or cognitive deficits (Ex.4F). And again refers to me saying I had worked since 2009.

**Page 512 (Ex.4F, p.1). This is check list form completed by Dr. Hutt on 03/12/20, which was said to be inconsistent with his report done on 03/06/20.**
**Pages 513 through 518 (Ex. 4F, p. 2, 3, 4, 5, 6, 7, 8) His statement that I reported to him I was unemployed and had been since 2009 is completely incorrect. In fact, I had told him of several jobs since 2009 that I had been terminated from due to lack of focus and negative interactions with others including a supervisor. Along with some outbursts at work. I have read Dr. Hutt's report and found several statements to be untrue. He stated that I drove myself to the appointment when in fact, my mother drove me and attended the session. He stated I referred to my father as "a partier" which I never said. I simply said my dad was an alcoholic who until I was 12 years of age would hit the bars most every night before coming home. He stated I received my college certificate in the early 90's which I did not receive until 2011. He states I raised my now two grown children when in fact I raised my four children.**
**Page 516 (Ex.4f, p.5) Dr. Hutt stated that I do appear to have some noticeable restriction in terms of my activities of daily living. And that I may indeed have problems with focus and persistence for tedious tasks.**
**Page 517 (Ex. 4F, p. 6). States my social functioning appears episodically impaired, I consequently appear to meet criteria for episodic episodes of deterioration, my capacities to get along with others appear to be episodically impaired, which is actually a rather more pressing and consistent vocational barrier. He also noted how I struggled moving from seated to standing position while completing tasks.**

**In Page 27-Paragraph 5 the judge did state that some information provided by Dr. Hutt is not persuasive, as it is inconsistent with Dr. Hutt's own examination, which did not indicate any significant attention, memory, or cognitive deficits, however in regards to the presumed inconsistent statements provided by me during my session with Dr. Hutt was said to possibly have been made to exaggerate the extent of my functional limitations. So the information that could be in my favor was considered not persuasive but the information damaging my credibility was valid.**

Page 27-Paragraph 3 states the judge will not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical findings or medical opinions, including those from my medical source.

Page 27-Paragraph 6. The judge makes point of Dr. Hutt's inconsistencies.

Page 27-Paragraph 4 indicates the considered medical opinions and prior administrative medical findings in my case. The opinions of the state agency medical and psychological consultants have been considered and found to be persuasive (Ex. 1A; 2A; 7A; 8A). After

reviewing the medical evidence available to them at the time they made their assessments, they determined I was able capable of light work, with additional postural and environmental limitations and no more than moderate mental limitation (Ex.1A; 2A; 7A; 8A

**In regards to the information found to be not persuasive Page 714 through 716 (Ex.8F, p.1, 2, 3) is a Medical Source Statement completed by John Carrington PA-C on 11/11/2020 should have been considered and John Carrington has been my doctor for more than 20 years. And my employement at CAPWN as his receptionist was one of the jobs I was terminated from for focus issues and mistakes made on the job.**

## Argument

Page 26-Paragraph 5. Mental health records from August 2020 note that I started taking Abilify for my symptoms but do not otherwise note any mental defects if the examination, which reflect that I had good eye contact , adequate hygiene, and walking with a normal gait and station. (Ex. 7F). States I was diagnosed with a mood disorder and anxiety disorder (Ex. 7F, p.7). Mental status examinations continue to note no serious functional limitations from my symptoms (Ex.11F).

Page 23-Paragraph 3. Examinations consistently note that I have appropriate hygiene and grooming, which supports me being able to perform personal care activities independently (2F, 3F, 4F, 11F, 6E). It states that I was able to perform household chores and care for my two grand-daughters during this time in question, which further supports no more than mild limitations in this area (Ex.6E; hearing testimony).

**In regards to appropriate hygiene and grooming, Back in 1994 I was seeing a Clinical Psychologist by the name of Michael Slosnerick, PH.D. At that time, he wrote in his report that I was very thin and gaunt looking, somewhat unkept and that I wore my clothing and hair in an unusual style. This was very hard on my self-esteem and since then I have tried very hard to maintain good hygiene and grooming practice. So, yes, I can perform personal care activities independently the majority of the time, but it is not without difficulty. There have been several times (especially the most recent years) that I have gone days without bathing due to the pain of working and getting home to only go to bed. There have been a few times in my life that I was unable to bath and get dressed on my own. Had to walk with help of crutches, was not able to get up and cook for children or clean up after them.**
**Page 741 (Ex.11F, p. 15)  Nathalie Cushing referred to my general appearance as adequate hygiene, appropriate dress, <u>disheveled</u> and look older than my age.**

**As far as household chores and taking care of my grand-daughters in the time period.  My Son (their father) would come and help with them.  Also, the girls ate breakfast and lunch at school and the sitters fed them on the days I work.**

**Pages 356 and 356 (Ex. 15E, p. 1; Ex. 16E, p.1) Are letters written by family members stating the help I receive from them.**

Page 28-Number 6. States that I am capable of performing past relevant work as a unit secretary, receptionist, and as an administrative clerk.

I was terminated from all of these positions as well as a position as an emergency dispatcher. Reasons for termination were lack of focus for three and outbursts for the fourth.

